E. L. GODDARD, *et al.*, v. WM. BOSSON.

PETITION NOT VERIFIED AND BOND UNAPPROVED, *for Removal of Cause to U. S. Circuit Court, Judgment by District Court Not Error.* Defendant in error commenced an action in the district court of Bourbon county against plaintiffs in error to quiet the title to a tract of land. The record nowhere disclosed the value of the land, or the consideration of the deeds of defendants, or the citizenship of the parties. On the answer-day, defendants filed a petition and bond for removal to the circuit court of the United States. In the petition they alleged, that the value of the land was $1,000, and that the parties were citizens of different states, but such petition was not verified, and no evidence was offered in support of its allegations. The bond was in the penal sum of $100, and was signed by two sureties. The bond was neither executed before nor approved by any court or officer, nor was there any affidavit or other evidence of the solvency of these sureties. The penalty of the bond was not fixed by any court or officer. The district court, without noticing the petition or bond, proceeded to try the case, and rendered judgment. Some two

months thereafter, defendants filed a motion to vacate the judgment, and tendered affidavits of the sureties as to their solvency, but no other testimony upon that or any other matter. The district court overruled the motion. *Held,* That the record discloses no error on the part of that court in rendering judgment in the first instance, or in overruling the motion to vacate the judgment.

*Error from Bourbon District Court.*

ACTION, brought by *Bosson,* against *Goddard* and *Corbin,* to remove an alleged cloud upon the title to eighty acres of land owned by him in Bourbon county, and to set aside certain deeds which the said *Goddard* and *Corbin* had to the land. Trial at May Term, 1877, of the district court, and judgment for *Bosson,* decreeing him to be the owner of the land in question, and in the lawful possession thereof. *Goddard* and *Corbin* bring the case here. The facts are fully stated in the opinion.

*Gillett & Forde,* for plaintiffs in error:

Under the act of congress of March 3d, 1875, this action is properly removable. It involves title to the land in controversy which is worth $1,000, and parties are citizens of different states. (Desty's Federal Procedure, pp. 72, 73, and §§ 2 and 3, also p. 77, § 3, notes and cases cited.)

Filing proper bond and petition ousts jurisdiction of state court. Dillon on Removal of Causes, page 67, says:

"Under such circumstances, the state court has no power to refuse the removal, and can do nothing to affect the right, and its rightful jurisdiction ceases *eo instanti;* no order for removal is necessary, and every subsequent exercise of jurisdiction by the state court, including its judgment, if one is rendered, is erroneous."

See also cases cited: *Osgood v. C. D. & V. R. R. Co.,* opinion by Drummond, Justice, published in vol. 2, Central Law Journal, pp. 275 and 283. Also, opinion of Miller, Justice in U. S. Circuit Court of Kansas, in *First National Bank v. King Bridge Company,* Central Law Journal, September 17th, 1875, p. 616.

The federal decisions are uniform that the above is the ·

law. That the case is removable is shown by the petition for removal and the pleading of plaintiffs below. It was unnecessary to make motion in court below to set aside judgment, but we did so out of courtesy to that court, and thinking that if it was sustained, the desired result could be obtained much sooner than by bringing the case at once to this court.

*Harris & Spencer,* for defendant in error:

The plaintiffs in error bring the case to this court, and claim that the court below was ousted of its jurisdiction of the case by the filing of the so-called petition and bond for removal. If that be the case, the judgment of the court below should be reversed. There is no other question to be argued or decided.

The so-called petition was not sworn to, nor was it filed by leave of the court. It was filed in vacation.

The sureties on the bond were not qualified as to their solvency. The bond was not approved by clerk or court. No motion for removal was made or filed.

It is alleged, in the so-called petition for removal, that the parties to the case are citizens of different states, and that the value of the land is more than $500; but neither of these propositions is supported by any evidence whatever.

We claim that even under the act of congress of March 3, 1875, which seems to have been passed for the purpose of reducing the state courts to the level of the police courts of our smaller cities and towns, that the district court of Bourbon county was not ousted of its jurisdiction by anything that was done by the plaintiffs in error in this case.

This question has not been passed upon directly by the supreme court of the United States, that we are aware of, but we think that that august tribunal has not yet gone, and will never go, to the extent of holding that the mere lodging of a so-called petition and bond for removal, with the clerk of the state court, *ipso facto,* ousts the court of the rightful jurisdiction which it has of a case.

We are aware that some of the inferior federal courts have so held, but the most of the courts where it is so held have decided upon the idea that Circuit Judge Drummond had so held in *Osgood v. Railroad Co.*, 2 Cent. L. J. 275, 283; but a close reading of that case will show that the question in this case was not involved in that. The question there was as to whether or not, when a proper bond and petition were filed in the state court in time, and the transcript filed in the federal court in time, the federal court had jurisdiction of the case. It is not claimed that the transcript in this case had been filed in the federal court. We are not discussing the question as to whether or not, if so-and-so had been done, the federal court would have had jurisdiction, but whether or not the state court lost its jurisdiction by virtue of what was done.

We think that Chief Justice Waite, in *Railway v. Ramsey*, 22 Wall. 328, where he says: "If upon the hearing of the petition it is sustained by the proof, the state court can proceed no farther," and "the petitioning party is then required to file in the circuit court copies of the process, and of all pleadings, depositions, testimony, and other proceedings in the state court, and this includes the proceedings by which the transfer was effected," most effectually disposes of *Osgood v. Railway Co.*, and all the cases based upon it.

If the law be as contended for by plaintiffs in error, we would inquire what court has jurisdiction of the case *after* the petition and bond are filed in the state court, and *before* the transcript is filed in the federal court? The federal court has no jurisdiction, certainly, until after the transcript is filed. No one claims that; and, under the act of March 3, 1875, no provision is made whereby the party against whom the removal is sought may have the transcript filed in the federal court. And yet it is said that one court loses jurisdiction when a certain thing is done, and another court obtains jurisdiction when a certain other thing is done.

The party seeking the removal may choose never to file the transcript in the federal court. All he wants is to be let

alone, and when he ousts one court of its jurisdiction, it is not to his interest that another should obtain jurisdiction.

But it is said, "There is a right of action on the bond." But an action on the bond may likewise be removed, and in a very short time there might be half a dozen actions in a state of suspended animation. *Out of* the state court and not *in* the federal court, the party who thus trifles with a court of justice may snap his fingers at his adversary, and inquire, "What are you going to do about it?" Is the state court to lose jurisdiction, because a paper called a petition is filed with the clerk during vacation?

In this case the land was not in controversy. It was only sought to remove an alleged cloud on the title. There is a statement in the so-called petition, that the land was of greater value than $500, but even that statement was not sworn to. It nowhere appears in the original petition in this case what the value of the land is. In fact, there is no showing on that point, except in the so-called petition for removal.

In *Insurance Co. v. Pechner*, and *Amory v. Amory*, decided by the Supreme Court of the United States at the October term of 1877, and reported in the Albany Law Journal, December 1, 1877, Chief Justice Waite holds, "that the state court, having once acquired jurisdiction, may proceed until it is judicially informed that its power over the case has been suspended."

How is it to be *judicially informed* that such fact exists, except its judicial action be invoked — except its attention be called to such matters and things as it is claimed establish that fact? Yet nothing of the kind was done in this case.

The act of March 3, 1875, requires the party seeking the removal to give "good and sufficient surety" — good as to the solvency of the sureties, sufficient as to the amount of the bond. In this case, the so-called bond was for the sum of $100.

As before stated, the sureties were not qualified as to their solvency. The so-called bond was not approved by the clerk. It was never exhibited to the court. Surely, the state court

has some right to inquire into the amount of the bond and the solvency of the sureties; else, a party, by giving a bond nominal in amount and executed by insolvent sureties, may oust the state court of its jurisdiction of a most important case.

But the plaintiffs in error were in default for want of an answer. They were required to answer by April 26th. They did not do so, and have never offered to file an answer up to the present time. The defendant in error was then entitled to a judgment, as prayed for in his petition. There was nothing in issue between the parties. (*Brenner v. Bigelow*, 8 Kas. 496.) There was nothing to remove. The default was an admission of the cause of action stated in the petition.

This precise question has been decided by District Judge Brown, in the United States circuit court for the eastern district of Michigan, in *McCallon v. Waterman*, 4 Cent. L. J., 413.

The theory upon which the inferior federal courts proceed, in holding that the mere filing of a so-called petition and bond for removal operates to oust the state court of its rightful jurisdiction seems to be, that the state court would be loath to part with its jurisdiction. But the judges of the state courts are as much governed by the constitution and laws of the United States as are the federal judges. The former would certainly regard their oaths as sacredly as the latter. Already, under the operation of the act of March 3, 1875, the federal courts are overwhelmed with petty lawsuits which involve no federal question, and which should be tried at less expense than necessarily attends them there.

The opinion of the court was delivered by

BREWER, J.: On the 21st day of March, 1877, the defendant in error commenced a suit in the district court of Bourbon county against the plaintiffs in error, to remove an alleged cloud upon the title to eighty acres of land owned by him in that county, and to set aside certain deeds which the plaintiffs in error had to the land. The plaintiffs in error

were non-residents of the state. Service was had by publication. The answer-day expired April 26th, but no answer was ever filed. April 26th the plaintiffs in error left with the clerk of the court two papers—a petition and bond for removal of the case to the United States circuit court. June 9th, the case was tried and judgment rendered as prayed for in the petition. August 20th, the plaintiffs in error filed a motion to set aside the judgment, alleging that the court had no jurisdiction of the case at the time it was tried. They claimed this want of jurisdiction solely on the ground that they had filed the petition and bond for removal. September 24th, the court refused to set aside the judgment.

The plaintiffs in error bring the case to this court, and claim that the court below was ousted of its jurisdiction of the case by the filing of the petition and bond for removal. If that be the case, the judgment of the court below should be reversed. But before a reversal can be ordered in this court, it must appear from the record that the jurisdiction of the district court had ceased. That it had once acquired jurisdiction, the record unquestionably discloses. Had that jurisdiction been terminated? It had not, most clearly, unless the United States court acquired or could acquire jurisdiction; and only of certain classes of cases can that court take jurisdiction. Citizenship and amount in controversy are important factors in determining whether any given case is one of which the United States court can take jurisdiction.

What does the record show in respect to these matters in this case? The petition filed by the plaintiff below contained no allegation of value, or of the citizenship of the parties. It alleged that plaintiff was in possession of the realty, but possession by tenant would have satisfied the requirements of the pleading. Service was made by publication, and an affidavit of non-residence of the defendants was filed, but this contained no intimation of the actual residence of either defendant. So far as the case disclosed prior to the filing of the petition and bond for removal, plaintiff and defendants might all have been citizens of the same state, and the value of the

10—21 KAS.

land as well as the consideration of the deeds complained of, less than five hundred dollars.

The petition for removal, which was not verified, stated that plaintiff was a citizen of Indiana, Goddard of· New Hampshire, and Corbin of New York; that defendants claimed full title to the land by reason of the deeds complained of, and that the land was of a value more than' $500, to wit, $1,000, and prayed a removal to the United States circuit court. The bond accompanying was in the penal sum of $100, was conditioned according to law, and was signed· by two parties as sureties. The defendants did not sign the bond. The amount of the penalty was settled by no court or officer. There was no qualification of their solvency by the sureties. The bond was executed before no one; there was no approval of the sufficiency of the sureties by clerk or court. Indeed, there was nothing, other than the fact that two names were written on the bond, to show that such sureties resided in Kansas; that they were worth a dollar, or even that they had any existence. The papers were filed in vacation. No motion was made to the court for a removal, and, for aught that appears, the court at the date of the judgment was entirely unaware of the existence of any such papers or application. At the hearing of the motion to vacate the judgment, the affidavit of the two sureties was filed, stating that they were each residents of Bourbon county, and worth $1,000 above all debts and exemptions. But no evidence was given as to the citizenship of the parties, or the value of the land or the consideration of the deeds. We believe that embraces all the facts in the record bearing upon the question. Did the district court err in its rulings? The law of congress applicable thereto, is as follows:

"SEC. 2. That any suit of a civil nature at law or in equity, now pending or hereafter brought in any state court, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and in which there shall be a controversy between citizens of different states, either party may remove said suit into the circuit court of the United States for the proper district.

"SEC. 3. That whenever either party, or any one or more of the plaintiffs or defendants entitled to remove any suit mentioned in the next preceding section, shall desire to remove such suit from a state court to the circuit court of the United States, he or they may make and file a petition in such suit in such state court before or at the term at which said cause could be first tried, and before the trial thereof, for the removal of such suit into the circuit court to be held in the district where such suit is pending, and shall make and file therewith a bond with good and sufficient surety for his or their entering in such circuit court on the first day of its then next session a copy of the record in such suit and for paying all costs that may be awarded by the said circuit court, if said court shall hold that such suit was wrongfully or improperly removed thereto, and, also, for their appearing and entering special bail in such suit, if special bail was originally requisite therein. It shall then be the duty of the state court to accept said petition and bond, and proceed no further in such suit." (Desty's Federal Procedure, 72, 73.)

Now the method prescribed in the last section for obtaining a removal, is by the filing of a petition and bond. This petition may be nothing more than a petition, a simple request for removal. Indeed, that is all the statute would seem to imply. It is nowhere stated that it must contain a full showing of the facts entitling the petitioner to a removal, nor is it anywhere said that any such showing is to be taken as conclusive. But the petition, the request for removal, amounts to nothing unless the case is one that can be removed. Where the amount in controversy is only one hundred dollars, the United States court cannot take jurisdiction, and the filing of a petition for removal does not divest the state court of jurisdiction; and the same is true where the parties are citizens of the same state. In many actions the pleadings disclose the amount in controversy, and in some cases the citizenship of the parties appears somewhere in the proceedings. In such a case the mere filing of the request for removal may be sufficient, for there upon the face of the record it appears that the case is one of which the federal court may take jurisdiction. But where upon the face of the papers nothing of the kind appears, then the state court may properly require

some showing before it refrains from further proceedings. The mere filing of a petition, unverified, and without any showing of a state of facts which would entitle the federal court to take jurisdiction, does not *ipso facto* oust the state court of its jurisdiction. A mere petition, unverified, proves nothing. The record as it stands in the state court may furnish the needed proof. If it does not, the party seeking the change must make it. Suppose a suit between citizens of the same state on a note for fifty dollars: can a defendant simply by filing a petition stating the amount in controversy to be over five hundred dollars, and to be between citizens of different states, and a bond for costs, oust the state court of jurisdiction? If he can, then every petty case before a justice of the peace can be transferred to the docket of the federal court. In the case of *Taylor v. Rockefeller*, lately decided by Mr. Justice Strong and reported in 7 Cent. Law Journal, pp. 349 and 350, the following appears:

"It may be admitted that when the petition, read in connection with the other parts of the record, does not show a case of which the circuit court has jurisdiction, the jurisdiction of the state court is not ousted. In such a case that court may proceed. It may therefore examine the petition and record, but its judgment upon the question whether a proper case appears for removal, is not conclusive upon the circuit court."

But if the state court may examine in one case, to see whether the case is one which may be removed, it may in all. The question is simply one of power. Concede the right to examine, and then the question in each particular case is simply whether its judgment is correct upon the facts. In *Blair v. W. P. Man. Co.*, reported in 5 Reporter, 600, the supreme court of Nebraska says:

"Where a petition is filed to remove a cause on the ground that it is between citizens of different states, and the facts stated in the petition are denied by answer, may the court not hear the testimony to determine whether the allegations of the petition are true? The question to be determined is one of fact, and in no manner depends on the construction to be given any law of the United States. The court having

obtained jurisdiction of the subject-matter and of the parties, no valid objection can be urged against its examining the grounds upon which it is sought to oust it of jurisdiction. It is the proper tribunal to make the examination."

In *Carswell v. Schley*, reported in 5 Reporter, p. 716, the supreme court of Georgia uses this language:

"The scheme of removal ordained by act of congress is open and public. It is by petition. It contemplates a taking with leave, and not furtively, by a sort of statutory larceny. The state court is to know of the proceedings for removal, and to see that they are such as the act prescribes. When they conform to the act, the court has no right or power to retain the case; and when they fail to conform in any essential particular, it has no right or power to send the case away or order it removed. Until there is a sufficient petition, there can be no transfer; and whether or not the petition, reading it in connection with the record, is sufficient, can and ought to be decided, in the first instance, by the court whose duty it is to accept it. The acceptance or rejection of the petition involves a decision upon its sufficiency."

In *Holden v. The Putnam Fire Insurance Company*, 46 N. Y. 1, we find this in the opinion:

"It was as essential for the defendant to show, upon the application to remove the cause, that it was brought by a citizen of this state, as that it was brought against the citizen of another state. The state court had jurisdiction of the action, and it could only be deprived of its jurisdiction by proceedings in conformity with the act of congress, and upon proof presented to the court of the facts which, under the act, determined its jurisdiction, and entitled the defendant to have the cause transferred to the circuit court of the United States."

In *Railway Co. v. Ramsey*, 22 Wall. 322, which, however, arose under a prior statute of removal, and is not, therefore, conclusive upon the present question, the chief justice says: "Such a petition must state facts sufficient to entitle him to have the transfer made. This cannot be done without showing that the circuit court would have jurisdiction of the suit when transferred. The one necessarily includes the other. If upon the hearing, it is sustained by the proof, the state court can proceed no further." And in *Amory v. Amory*, 5

Otto, 186, the supreme court of the United States, under a like statute, holds, "that the state court having once acquired jurisdiction may proceed until it is judicially informed that its power over the case has been suspended." And in the case of the *D. R. Const. Co. v. The D. & St. P. R. R. Co.*, 46 Iowa, 406, the precise question here involved was presented, and the court holds that there must be proof as well as petition. It says:

"The petition was not verified, and there was no evidence, by affidavit or otherwise, presented to the court tending to support the allegations in the petition, that Meyer & Deneson, or either of them, were citizens of some other state than Iowa. In the absence of any decision of the supreme court of the United States, we are unwilling to hold, that merely filing a petition and bond operates as a removal of the action, or, rather, ousts the state court of jurisdiction."

And the court then proceeds very forcibly to point out the ills to follow from such a construction of the statute.

Again, that some evidence should be presented by affidavit or otherwise, when the record fails to disclose a case of which the federal court can take jurisdiction, receives support from the latter part of said § 3. Provision is there made for the removal of cases where citizens of the same state claim title to the land in controversy by grant from different states. Ordinarily, in real-estate actions the value does not appear on the record, and so the statute reads:

"And the matter in dispute exceeds the sum or value of five hundred dollars, exclusive of costs, *the sum or value being made to appear*, one or more of the plaintiffs or defendants, before the trial, may state to the court and make affidavit, if the court require it, that he or they claim and shall rely upon a right or title to the land under a grant from a state," etc.

The value is to be made to appear, because such value does not appear by the record; but the mere statement of the party seeking a change does not show the value. It would be strange if a right could be acquired and a court divested of jurisdiction upon the mere unsupported, unverified assertion of the party seeking such right. Rights in judicial proceedings are not thus established.

But again, the statute requires a bond with good and sufficient surety. The statute does not specify the amount of the penalty. Who authorized the defendants to limit the liability on the bond to $100?—and how could the court hold that such amount was sufficient? There was no evidence tendered to the court that the sureties were worth a dollar. Is it the duty of the state court to take a bond with any penalty the party may choose to insert, and any sureties he may see fit to obtain? And if not, is it the court's duty to make inquiry as to the sufficiency of the penalty or the solvency of the sureties? It would be strange if when a bond is found among the papers, the duty was cast upon the court of hunting up the sureties, ascertaining whether in fact any such parties existed, and if so, whether they were worth anything. We do not understand the statute as casting any such duty upon the court. If the party seeking the removal does not feel interested enough in the matter to furnish some evidence of the solvency of the sureties, we think the court may ignore the bond, and treat it as insufficient. At the time the judgment was rendered, no such evidence was before the district court. Can we say the court erred in not accepting the bond, and holding the sureties solvent and sufficient? In short, as the case stands, we are asked to hold that the district court erred in not surrendering its jurisdiction, and declining to proceed further in the case when there was not a scintilla of evidence before it that the case was one of which the federal court could take jurisdiction, or that the bond for removal was sufficient in amount, or the sureties on it worth a dollar. We are not prepared to so hold, and think that the judgment must be affirmed.

VALENTINE, J., concurring.